1
2
3
4
5
6
7
8
9
10              UNITED STATES DISTRICT COURT
11            SOUTHERN DISTRICT OF CALIFORNIA
12

| | |
|---|---|
| VICENTE A. ROCHE, <br><br> Plaintiff, <br><br> v. <br><br> BANK OF AMERICA, NATIONAL ASSOCIATION, a national banking association; and DOES 1 through 100, inclusive, <br><br> Defendants. | CASE NO: 12-CV-2002 W (WVG) <br><br> **ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT [DOC. 6-1]** |

Pending before the Court is Defendant Bank of America, N.A.'s ("BANA") motion to dismiss Plaintiff Vicente A. Roche's ("Roche") complaint under Federal Rule of Civil Procedure 12(b)(6). (*MTD* [Doc. 6-1].) Roche opposes. (*Pl.'s Opp'n* [Doc. 8].) The Court decides the matter on the papers submitted and without oral argument. See Civ. L. R. 7.1(d.1). For the reasons discussed below, the Court **DENIES** Defendant BANA's motion.

\\

\\

I. **BACKGROUND**

On July 2, 2004, Roche entered into a written promissory note agreement with Countrywide Home Loans, Inc. ("Countrywide") and secured a deed of trust (collectively referred to as the "Loan") in order to finance the purchase of a condominium located at 830 South Sierra Avenue, Solana Beach, California (the "Residence"). (*Compl.* [Doc. 1], ¶ 9.) Roche agreed to pay a principal sum of $460,000.00, in monthly installments of $2,795.01, to Countrywide. (*Id.* at ¶ 10.) However, prior to March 16, 2012,[1] and without Roche's knowledge, Countrywide sold and/or transferred all of its rights, titles, and interests to BANA. (*Id.* at ¶ 11.) Thus, BANA assumed all of Countrywide's rights and obligations of the Loan, and Roche dealt solely with BANA regarding the Loan. (*Id.* at ¶¶ 12-13).

In May 2011, Roche failed to pay the property tax assessment on the Residence due to an inadvertent oversight. (*Id.* at ¶ 15.) BANA paid the assessment and established an escrow account for both he property tax it paid and for the payment of future property tax assessments. (*Id.* at ¶ 16.) BANA charged Roche $7,600.39 to fund the escrow account: $2,600.39 for the escrowed taxes and $5,000.00 for projected unfunded tax payments. (*Id.*) As of July 2011, BANA increased Roche's monthly payments to $4,183.15. (*Id.*) Roche learned of this increase when he received a letter from BANA dated August 16, 2011, which informed him that the July 2011 payment was insufficient. (*Id.* at ¶ 17.) The letter advised Roche that he still owed $4,460.31 to bring his loan up to date. (*Id.*)

On August 16, 2011, Roche's attorneys sent two checks to BANA for Roche's July and August payments, each in the amount of $4,500.00. (*Id.* at ¶ 19.) Upon discovering that BANA did not credit one check toward the August payment, Roche requested a correction of BANA's misallocations and information as to how he could satisfy and eliminate the escrow account. (*Id.* at ¶¶ 20-21.) Shortly thereafter, on or

---

[1] Roche does not know on what date Countrywide sold and/or transferred its interest to BANA, but the transfer to BANA was recorded on March 16, 2012. (*Id.* at ¶ 11.)

about September 6, 2011, a BANA employee, Sharon, stated that if Roche paid $11,291.00, the escrow would be removed.[2]  (*Id.* at ¶¶ 22-23.)  Sharon also told Roche he needed to send a letter to BANA's payment research department requesting correction of the loan account.  (*Id.* at ¶ 24.)

Roche sent BANA a letter, stating that BANA was not crediting Roche's payments toward the Loan and requesting a correction of the account and the return of his original payment amount.  (*Id.* at ¶ 26.)  Roche also sent BANA two checks totaling $11,291.30.  (*Id.* at ¶ 27.)  BANA did not credit Roche's September payment, remove the escrow account, or return Roche's payments to their original amount.  (*Id.* at ¶ 29.)

In October, Roche attempted to make a payment at a BANA branch in the amount of $2,795.01, his original payment amount.  (*Id.* at ¶ 30.)  The branch did not accept the payment, and Roche learned that BANA still had not reduced the payment amount, but also had assessed additional penalties.  (*Id.*)  Roche then contacted BANA's customer service and spoke with John, who stated that Sharon's directions were incorrect and that she had no authority to make the statements.  (*Id.* at ¶ 31.)  Roche asked John for BANA to provide an accounting on the Loan account, but BANA never responded to the request.  (*Id.*)

In December, Roche again contacted customer service and spoke with Kristen, who advised that the escrow account could not be removed as suggested by Sharon.  (*Id.* at ¶ 32.)  Kristen told Roche that $3,198.22 was needed to bring the Loan current as of October 2011 and that subsequent monthly payments, inclusive of the escrow payments, would be $3,433.03.  (*Id.* at ¶¶ 33-34.)  Accordingly, Roche paid $3,198.22 for October and $3,433.03 for November.  (*Id.* at ¶ 35.)  BANA, however, still did not correct Roche's account or accept the agreed-upon payment amount of $3,433.03 and continued to report Roche as delinquent to national credit bureaus.  (*Id.* at ¶¶ 36-37.)

---

[2]$7,425.00 would go toward the escrow account, and $3,866.00 would cover the September 2011 payment.  (*Id.* at ¶ 23.)

On or about December 6, 2011, Roche sent BANA another letter, detailing the errors in his account and requesting immediate correction of the account and the credit reports.[3]  (Id. at ¶ 38.)  BANA did not correct the account or respond to Roche's request.  (Id.)  On May 23, 2012, counsel for Roche sent a letter to BANA disputing the accounting of the Loan and demanding its correction.  (Id. at ¶ 40.)  Counsel also demanded retraction of BANA's negative credit reports and restoration of the original payment amount.  (Id.)  BANA responded to counsel's letter on August 2, 2012, admitting it misapplied Roche's August 2011 payment.  (Id. at ¶ 41.)  BANA did not mention or respond to Roche's remaining requests.  (Id.)

On August 13, 2012, Roche filed the instant action alleging (1) breach of written contract, (2) breach of oral contract, (3) negligent misrepresentation, (4) fraud, (5) violation of the Rosenthal Fair Debt Collection Practices Act, (6) violation of the Real Estate Settlement Procedures Act, (7) violation of the California Business and Professions Code, and (8) violation of the California Consumer Credit Reporting Agencies Act.  The Complaint also requests an accounting and injunctive relief.  On September 20, 2012, BANA moved to dismiss the Complaint in its entirety.

## II.    LEGAL STANDARD

The Court must dismiss a cause of action for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency.  See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory.  Balisteri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).  In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party."  Vasquez v. L.A. Cnty., 487 F.3d 1246, 1249 (9th Cir. 2007).

---

[3] Roche asserts his credit score dropped from 790 to 625.  (Id. at ¶ 46.)

However, the Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Instead, the allegations in the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but rather asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Generally, the court may not consider material outside the complaint when ruling on a motion to dismiss. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, the court may consider any documents specifically identified in the complaint whose authenticity is not questioned by the parties. Fecht v. Price Co., 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superceded by statute on other grounds). Moreover, the court may consider the full text of those documents, even when the complaint quotes only selected portions. Id. The court may also consider material properly subject to judicial notice without converting the motion into a motion for summary judgment. Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994) (citing Mack v. South Bay Beer Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) *abrogated on other grounds by* Astoria Federal Savings and Loan Ass'n v. Solimino, 501 U.S. 104 (1991)).

### III. DISCUSSION

#### A. Breach of Written Contract

BANA moves to dismiss Roche's first claim for breach of written contract for failure to allege a breach of contract or damages. (*MTD* 4.) Roche counters, arguing

that his complaint "alleges all necessary elements and facts to support [his] breach of contract claim." (*Opp'n* 6.)

In California, "[a] cause of action for breach of contract requires proof of the following elements: (1) existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." CDF Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239 (2008). "Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous." Monaco v. Bear Stearns Residential Mortgage Corp., 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008). "A contract provision will be considered ambiguous when it is capable of two or more reasonable interpretations." Id. (citing Bay Cities Paving & Grading, Inc. V. Lawyers' Mut. Ins. Co., 5 Cal. 4th 854, 867 (1993). "[T]he language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." Cal. Civ. Code § 1654.

**1.    Roche has properly plead a breach of written contract.**

BANA first argues that Roche's failure to timely pay his property taxes triggered a series of BANA actions that were all authorized by the Loan. (*MTD* 4.) These actions included (1) creating and funding an escrow account, (2) increasing Roche's monthly payments to payoff this escrow account, and (3) charging late fees in light of Roche's partial payments on his newly increased monthly payments. (*Id.*) According to BANA, because these actions were authorized by the Loan, Roche cannot claim that they constitute a breach of contract. (*Id.*) BANA's argument is flawed, as it oversimplifies Roche's claims.

There is no debate that Loan "explicitly authorizes BANA to create and fund an escrow account subsequent to a borrower's failure to pay insurance or taxes." (*MTD* 4.) Indeed, the parties do not dispute that Roche's admitted failure to timely pay property taxes triggered this escrow account clause. (*Compl.* ¶ 15; *MTD* 4.) However, Roche's breach of written contract claims are more numerous than BANA suggests. Apart from the challenged actions listed above, Roche also claims that BANA refused

to accept payments, failed to credit payments, and assessed late charges and penalties in violation of the Loan. (*Compl.* ¶¶ 41, 45.) Such actions are not authorized by the Loan and therefore constitute properly pled breaches of contract.

In its reply, BANA argues that "plaintiff's checks were credited to his account, but the checks were insufficient to satisfy the principal and interest due under the note in addition to the escrow allocation, and thus BANA charged plaintiff late fees for the amount due and unpaid." (*Reply* 2.) BANA points to the payment history Roche attached to his complaint to support this theory. (*Id.*) However, the payment history is unclear as presented, and BANA has failed to clarify it in any meaningful way.

For example, Roche deposited two $4,500 checks on August 16, 2011. (*Tab 2* [Doc. 1-2] 61, 62.[4]) Yet, only $4,500 was credited to the account on August 16, 2011. (*Id.* 59, 60.) Even more confusing is the fact that the $4,500 deposit was split into a "regular payment" of $4,183.15 and a "misc. posting" of $316.85. (*Id.* 59.) Then, curiously, less than a month later that "misc. posting" of $316.85 was removed from the account. (*Id.*) A similar split occurred when Roche deposited $11,221.30 on September 21, 2011. (*Id.* 60.) The reasons behind these splits is unclear from the account statement and BANA has provided no explanation as to why these splits occurred. Due to this lack of clarity, the Court is unwilling to accept BANA's claims that Roche's "checks were credited to his account" but were "insufficient" to avoid late fees.

**2.     Roche has properly plead damages.**

BANA next argues that Plaintiff has failed to properly allege damages because his monthly payment increases, late fees, and negatively impacted credit scores were all due to his failures under the Loan. (*MTD* 4.) In essence, BANA suggests that because Roche has failed to plead a breach of the Loan, he has failed to plead damages.

---

[4]The exhibit is not consecutively paginated, so the Court refers to the page numbers assigned by the Court's electronic filing system.

1  However, as explained above, BANA has properly plead numerous breaches of the
2  Loan.
3        In light of the foregoing, BANA's motion to dismiss Roche's written contract
4  claims is **DENIED**.

6        **B.**     **Breach of Oral Contract**
7        BANA moves to dismiss Roche's breach of oral contract claim as well. It claims
8  that the alleged modification is barred by the statute of frauds. (*MTD* 4.) Roche claims
9  that the alleged oral modification falls within an exception to the statute of frauds.
10 (*Opp'n* 7.)
11       Under California law, "(b) [a] contract in writing may be modified by an oral
12 agreement to the extent that the oral agreement is executed by the parties." Cal. Civ.
13 Code § 1698(b). "If there exists sufficient consideration for an oral modification
14 agreement, then full performance by the promisee alone would suffice to render the
15 agreement 'executed' within the meaning of section 1698." Raedeke v. Gibraltar Sav.
16 & Loan Assn., 10 Cal. 3d 665, 698 (1974).
17       Here, Roche's allegations satisfy the requirements of Cal. Civ. Code § 1698(b).
18 First, Roche has alleged sufficient consideration: he claims that the oral modification
19 was reached after "Mr. Roche expended significant time and energy to negotiate and
20 arrange for payment of the requested amount in full performance of his obligations."
21 (*Compl.* ¶ 51); see Ansanelli v. JP Morgan Chase Bank, N.A., C 10-3892 WHA, 2011
22 WL 1134451, at *4 (N.D. Cal. March 28, 2011). Second, he has alleged an oral
23 modification of the Loan. (*Compl.* ¶ 49.) Third, he has alleged that he fully performed
24 his obligations under the agreement. (*Compl.* ¶¶ 50-52.)
25       Both parties attempt to apply Cal. Civ. Code § 1698(c) to the case at bar.
26 However, application of subdivision (c) is unnecessary because the oral modification,
27 as plead, satisfies § 1698(b). "The introductory clause of subdivision (c) recognizes that
28 the parties may prevent enforcement of executory oral modifications by providing in the
written contract that it may only be modified in writing." Cal. Civ. Code § 1698, law

revision commission comments. However, the law revision commission explained that subdivision (c) is inapplicable to an alleged oral modification if it were otherwise valid under subdivision (b). As explained above, Roche has plead a valid oral modification under subdivision (b), and thus subdivision (c) is irrelevant here.

In light of the foregoing, BANA's motion to dismiss Roche's oral modification claims is **DENIED**.

### C.   Rosenthal Fair Debt Collection Practices Act

BANA also moves to dismiss Roche's claims under the RFDCPA. It argues that it is not a "debt collector" as defined by the RFDCPA. (*MTD* 5.) It further argues that Plaintiff's mortgage is not a "debt" under the RFDCPA. (*Id.* 6.)

First, Defendant is a "debt collector" under the RFDCPA. The definition of the "debt collector" under the RFDCPA includes any person who, "in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." See Cal. Civ. Code § 1788.2(c). In this case, because Defendant is collecting a debt that it originated, and because it does so "in the ordinary course of business," it is a "debt collector" under the RFDCPA. See id.

BANA cites a number of cases for the proposition that BANA, as a loan servicer, is not considered a "debt collector" under the RFDCPA. First and foremost, this argument directly contradicts the language of the RFDCPA. Nowhere does the RFDCPA indicate that "loan servicers" are outside the purview of the statute. Second, the Court disagrees with the reasoning of the courts in the cases upon which Defendant relies.

A review of BANA's authority reveals that each case bases its conclusion that loan servicers are not governed by the RFDCPA on the faulty premise that the Fair Debt Collection Practices Act ("FDCPA"), which explicitly excludes loan servicers from its purview, is co-extensive with the RFDCPA. Lal v. Am. Home Servicing, Inc., 680 F. Supp. 2d 1218, 1224 (E.D. Cal. 2010); Nool v. Home Servicing, 653 F. Supp. 2d 1047, 1052-53 (E.D. Cal. 2009); Olivier v. NDEX West, LLC, No. 9-cv-0099-OWW-

GSA, 2009 WL 2486314, at *3 (E.D. Cal. Aug. 10, 2009); Cordova v. America's Servicing Co., No. C-08-05728 SI, 2009 WL 1814592, at *2, (N.D. Cal. June 24, 2009). However, this is not the case.

Under the FDCPA, the term "debt collector" does not include:

> [A]ny person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... (ii) concerns a debt which was originated by such person [or] (iii) concerns a debt which was not in default at the time it was obtained by such person.

15 U.S.C. § 1692a(6)(G). "The legislative history of section § 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985). The RFDCPA includes no such exclusion for loan servicers. Specifically, the RFDCPA does not exclude banks which collect debts owed on debts which they originated. Thus, this Court concludes that the "debt collector" in the state statute is broader than the definition in the federal statute, and includes BANA in this case. See Cal. Civ. Code § 1788.2(c).

Second, Roche's mortgage is a "debt" as defined by the RFDCPA. The definition of "debt" under the RFDCPA is "money, property or their equivalent which is due or owing or alleged to be due or owing from a natural person to another person." Cal. Civ. Code § 1788.2(d). Nothing in the plain meaning of this statutory definition suggests that a mortgage, which is money owing to a person (defined as "a natural person, partnership, corporation, limited liability company, trust, estate, cooperative, association or other similar entity"), is outside the purview of the RFDCPA. Id. at §1788(g).

In addition, the cases cited by BANA are inapplicable as they all stand for the proposition that foreclosure on a mortgage is not "debt collection" and a foreclosed mortgage is not "debt" under the RFDCPA. Pittman v. Barclays Capital Real Estate, Inc., No. 09-CV-241-JM (AJB), 2009 WL 1108889, at *3 (S.D. Cal. April 24,

2009)(holding that "foreclosing on a deed of trust does not invoke the statutory protections" of the RFDCPA); <u>Izenberg v. ETS Services, LLC</u>, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008)(holding that "foreclosure does not constitute debt collection under the RFDCPA"); <u>Keen v. Am. Home Mortgage Servicing</u>, 664 F. Supp. 2d 1086, 1095 (E.D. Cal. 2009). Because the subject loan has not been foreclosed upon, this authority is inapposite.

In light of the foregoing, BANA's motion to dismiss Roche's RFDCPA claims is **DENIED**.

### D.     California Consumer Credit Reporting Agencies Act

BANA next moves to dismiss Roche's claims under the California Consumer Credit Reporting Agencies Act ("CCCRAA"). It argues that Roche has not alleged, and cannot allege "a falsity" as required under the CCCRAA. (*MTD* 6.)

As an initial matter, a review of the CCCRAA section at issue reveals no requirement that a putative plaintiff allege a "falsity." <u>See</u> § 1785.25(a). Instead, § 1785.25(a) states that "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Roche alleges that BANA has done precisely what the statute forbids. Specifically, Roche alleges that BANA, "[o]n multiple occasions . . . furnished information to third party credit bureaus it knew or should have known was incomplete or inaccurate regarding specific transactions and/or experiences [BANA] had with Mr. Roche in relation to Mr. Roche's Loan with [BANA]." (*Compl.* ¶ 115.) These allegations are sufficient to survive a motion to dismiss.

BANA's argument that it did not report incomplete or inaccurate information to credit bureaus because the Loan authorized BANA to advance funds for taxes, demand repayment from Roche, and assess late fees is incomplete. (*MTD* 7.) While it is true that such activity was authorized by the Loan, Roche also claims that BANA refused to accept payments, failed to credit payments, and assessed late charges and

penalties in violation of the Loan. (*Compl.* ¶ 45.) Moreover, Roche has alleged that BANA should not have reported that he was delinquent on his mortgage payments because "Mr. Roche took all steps requested by [BANA] to bring his Loan current and that [BANA] continually failed to correct its own errors to Mr. Roche's Loan account, and reported Mr. Roche as delinquent . . . because of [BANA]'s own errors after being informed" of these errors. (*Compl.* ¶ 92.) These allegations directly contradict BANA's claim that Roche's delinquencies were all his own fault and instead suggested that BANA is partly to blame. (*See, e.g., MTD* 6-7.)

In light of the foregoing, BANA's motion to dismiss Roche's CCCRAA claims is **DENIED**.

### E. Negligent Misrepresentation and Fraud

BANA also moves to dismiss Roche's fifth and sixth causes of action for negligent misrepresentation and fraud. According to BANA, Roche has failed to allege inducement, reliance, or damages. (*MTD* 7.) BANA also argues that Roche's negligent misrepresentation claims fail because it owes no duty of care to Roche. (*Id.* 8.)

A claim for fraud or intentional misrepresentation requires (1) a representation, (2) falsity, (3) knowledge of falsity, (4) intent to deceive, and (5) reliance and resulting damages. Cooper v. Equity Gen. Ins. Co., 219 Cal. App. 3d 1252, 1262 (1990). A claim for negligent misrepresentation is identical except plaintiff need not show defendant knew its representations were false, only that defendant lacked reasonable grounds to believe the representation was true. Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003).

First, BANA argues that Roche "did not rely on the alleged misrepresentations regarding his monthly loan payment because he paid more than he was allegedly told he was owed." (*MTD* 7.) However, a closer examination of the payment history contradicts this claim. Roche alleged that on September 6, 2011, BANA told him that a payment of $11,291.00 would return him to *status quo* on his mortgage payments.

(*Compl*. ¶66.)  Later that month, he appears to have deposited $11,291.30.  (*Tab 2* 60.)  Although this deposit is 30 cents higher than allegedly owed, it seems that Roche was attempting to comply with the alleged representations BANA made on the September 6 phone call.  Therefore, the Court finds this argument unpersuasive.

Second, BANA argues that Roche "cannot allege detrimental reliance on any alleged statement regarding removal of the escrow account" because he was "always obligated to make monthly payments regardless of the existence of the escrow account." (*MTD* 8.)  This argument is misguided; although Roche was obligated to make monthly payments, he was not obligated to make monthly payments that exceed what BANA was due under the Loan.  Again, BANA oversimplifies Roche's claims by assuming that they only attack the creation of the escrow account when in reality they attack BANA's alleged refusal to accept payments, failure to credit payments, and assessment of late charges and penalties in violation of the Loan.

Third, BANA argues that Roche cannot allege reliance on BANA's alleged statement that "all negative reports to the credit bureaus would be corrected if Mr. Roche made the [October 2011 and November 2011] payments" because he was always obligated to make monthly loan payments and repay the property taxes.  (*Compl.* ¶ 71; *MTD* 8.)  However, as explained above, Roche was never obligated to pay BANA overages caused by BANA's alleged failures.

BANA next maintains that it cannot be liable for negligent misrepresentation "because it owes plaintiff no duty of care" because the loan transaction between BANA and Roche does not exceed the scope of its conventional role as a money lender. (*MTD* 8-9.)  Roche states that BANA exceeded its conventional role as lender when it offered Roche an opportunity to modify the escrow and payment terms of the loan. (*Compl*. ¶ 72.)

"The rule that a lender does not have a duty to a borrower is only a 'general rule,' and only applies to situations where a lender plays its conventional role.  Johnson v. HSBC Bank USA, Nat. Ass'n, No. 11-CV-2091-JM-WVG, 2012 WL 928433, at *4 (S.D. Cal. March 19, 2012).  In Johnson, the court found that a lender went beyond its

conventional role when it "established a loan modification plan with Plaintiff, made excessive interest charges and made 'derogatory credit reports to credit bureaus.'" Id.

Here, Roche has alleged that BANA went beyond its conventional role in a manner very similar to the defendant in Johnson. First, Roche alleges that BANA offered him an opportunity to modify the escrow account and payment terms of the loan. (*Compl.* ¶ 72.) Second, he alleges that BANA charged excessive unauthorized interest based on its own errors. (*Compl.* ¶ 75.) Third, he alleges that BANA made derogatory credit reports to credit bureaus. (*Id.*) Contrary to BANA's argument, this is precisely "beyond the domain of a usual money lender." Ansanelli, 2011 WL 1134451, at *7; Johnson, 2012 WL 928433, at *4. Roche's allegations constitute "sufficient active participation to create a duty of care to plaintiffs to support a claim for negligence." Id.

In light of the foregoing, BANA's motion to dismiss Roche's negligent misrepresentation and fraud claims is **DENIED**.

### F.     Real Estate Settlement Procedures Act

BANA moves to dismiss Roche's claims for violations of the Real Estate Settlement Procedures Act ("RESPA"). BANA argues that Roche "has not alleged any damages *as a result* of the alleged failure to properly respond to the purported QWRs ["Qualified Written Requests"]." (*MTD* 9.)  BANA also argues that the alleged damages were caused by Roche's failure to pay his taxes and loan on time. (*MTD* 10.) Contrary to BANA's suggestions, the complaint states that due to BANA's failure to respond to Roche's QWRs on at least three separate occasions, Roche suffered damages including higher monthly payments, unauthorized charges, negative impacts on his credit, and severe emotional distress. (*Compl.* ¶¶ 95-105, 108.) These allegations of damages are sufficient under RESPA at this stage.

In light of the foregoing, BANA's motion to dismiss Roche's RESPA claims is **DENIED**.

G.  **Business and Professions Code**

BANA next moves to dismiss Plaintiff's Business & Professions Code § 17200 claim. First, BANA argues that Roche's claim is "derivative of the many other failed causes of action in the complaint," and therefore fails because the entire "complaint is baseless." (*MTD* 10-11.) In essence, BANA is arguing that for the same reasons stated in its arguments for dismissal of Roche's other claims, the § 17200 claim should be dismissed as dependent on those claims. This argument fails as Roche's other claims survive BANA's motion.

Second, BANA again argues that Roche's claim is deficient because Roche was obligated to make loan payments and tax payments in a timely matter, and his failure to do so was the sole cause of his alleged injuries. (*MTD* 11.) As explained in detail above, Roche does not dispute that he was obligated to pay his taxes and mortgage in a timely manner, but instead that BANA breached the Loan in a variety of ways when Roche was trying to bring his payments back to *status quo*.

In light of the foregoing, BANA's motion to dismiss Roche's § 17200 claim is **DENIED**.

H.  **Accounting**

Roche asks this Court to perform an accounting to determine the amount of money he owes BANA. (*Compl.* ¶¶ 60–64.) Under California law, a plaintiff may assert a claim for accounting if a fiduciary relationship between the plaintiff and defendant exists, or if "'the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable.'" Wolf v. Super. Ct., 106 Cal. App. 4th 625, 34–35 (2003); Civic W. Corp. v. Zila Indus. Inc., 66 Cal. App. 3d 1, 14 (1977) (quoting 3 Witkin, Cal. Proc. 2d (1971) Plead, § 674, p. 2300–01).

While Roche's claim for accounting does not expressly allege a fiduciary relationship exists between the parties, it does explain that due to "a number of accounting errors . . . Roche is unable to determine the principal owed on the Loan." (*Compl*. ¶¶ 60-62.) Not only does Roche claim that he is unable to determine the

principal owed on the loan, he also claims that numerous accounting errors committed by BANA necessitate the accounting. (*Id.* ¶¶ 62-63.) Moreover, as explained in detail above, the account history is unclear at best. Accordingly, the Court finds the allegations in the Complaint sufficient to establish that the account is "complicated" at this stage of litigation. See Civic W. Corp., 66 Cal. App. 3d at 14.

BANA's argument that Roche's accounting claim does not arise from relevant actionable claims fails as well, since the Court has not dismissed any of Roche's claims. (*MTD* 11; *Reply* 8.) In light of the foregoing, BANA's motion to dismiss Roche's accounting claim is **DENIED**.

### I.    Declaratory Relief

Finally, BANA moves to dismiss Roche's declaratory relief claim. However, BANA's argument that Roche's declaratory relief claim does not arise from "any potentially valid claim" fails, since the Court has not dismissed any of his claims. (*MTD* 11.) In light of the foregoing, BANA's motion to dismiss Roche's declaratory relief claim is **DENIED**.

### IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant BANA's motion [Doc. 6-1].

**IT IS SO ORDERED.**

DATED: July 9, 2013

_____
Hon. Thomas J. Whelan
United States District Judge